May it please the Court, Chris Cariello for Appellant Kraig Kast. I'd like to reserve three minutes of my time for rebuttal. I've been asked to address two points, and I'll give the answers in turn. First, on vicarious infringement, the rule that decides this case is that a direct infringer, here only websites avoidance of license fees, is insufficient standing alone to satisfy the direct financial benefit wrong. Were it otherwise, that requirement would be satisfied in virtually every case, conflicting with over half a century of case law and the underlying logic of vicarious infringement. Second, the district court should have known instruction on willfulness, misstated the law on that — on what willfulness requires. Willfulness requires recklessness. It should have known instruction as a negligence instruction, which enabled the jury to hold Mr. Kast liable as a willful infringer for mere careless conduct. And as a result of these errors, Mr. Kast has been saddled with extraordinary liability for the actions of a bargain web developer on a website that no one ever saw. Turning first to the direct financial benefit requirement, I want to make a broad legal point, and then I'll turn back to the record. On the law, in every single case, in every single case of vicarious infringement, it's going to be true that a direct infringer infringes and that a direct infringer does not pay a license fee in order to permit that conduct. That's going to be true whether or not the infringement is a draw for the alleged vicarious infringer. That's going to be true whether or not the alleged infringement somehow leads to profit, to an inflation of the bottom line for the alleged vicarious infringer. It's going to be true virtually no matter what. And that rule departs from the traditional rationale for vicarious infringement in that way. Vicarious infringement is infringement over and above direct infringement. And it's appropriate only, as Shapiro and Bernstein put it over 50 years ago, when there's an obvious and direct benefit. And the rationale there is, in that circumstance, it's fair to require a defendant to police the potentially illicit conduct of others. In that situation, it's fair for a defendant to have to compensate a plaintiff for the invasion of the plaintiff's legal rights that is occasioned by another. That rationale is not going to be triggered every single time a direct infringer doesn't pay license fees. That's all this Court needs to hold to decide this case. That's what Erickson proceeded upon before the trial court, a theory that avoidance of license fees was enough. On appeal, Erickson has suggested some other theories, and so that brings me to my factual point. On this record, Mr. Kast got no benefit whatsoever. Mr. Kast saved not a dime on web development fees. Mr. Kast, there is no evidence that anyone ever visited this website. There is no evidence that this website ever led to customers. And there is certainly no evidence that these photographs, that this infringement by only websites, led to anything that benefited Mr. Kast. In fact, Mr. Kast's contract, only websites, was acting averse to Mr. Kast's interests when it infringed here. Mr. Kast's contract with only websites required only websites to provide two photos per page. So only websites is breaching its contract here when it infringes Wells Fargo's, the photographs from Wells Fargo's webpage, and provides them instead of the photographs that it was contractually obligated to provide. The only way Erickson can win on this issue is with some kind of per se rule. With a rule that says non-payment of license fees will always suffice. With a rule that says any infringement in any commercial context, on any commercial website, indeed, within any business, qualifies per se because it's wrapped up somehow in a for-profit enterprise. That's not the law. That's never been the law. And there's really no reason in this case to expand it, given that there's nothing on this record that suggests any benefit. I'm going to turn to the willfulness point now and the should have known instruction. Was this instruction, for lack of a better phrase, conjunctive? I mean, it's the instruction said, if he knew, point one, point two, if he was willfully disregarding the holder's rights, or three, should have known. How do we know the jury didn't make its willfulness finding on points one or two? So we don't know that for sure. What we do know is that the jury was permitted to find willfulness on mere negligence instruction on the basis of should have known. It is phrased in the disjunctive. Each of them is an or. Erickson's counsel told the jury, you don't even need to find recklessness in this case. Should have known is enough. And so we don't know exactly what the jury rested its decision on. That's the problem. So the presence of the phrase should have known infects the whole instruction? Yes, Your Honor, because it lowered the bar. It lowered the bar from culpable conduct, the sort of egregious, blameworthy conduct, down to careless conduct. Over and over again, I want to emphasize how similar this instruction is to instructions that have been rejected as negligence instructions in the past. The BMG case in the Fourth Circuit, where the defendant, quote, knew or should have known of such infringing activity. Comail, a case in the Federal Circuit, quote, knew or should have known that its actions would induce actual infringement. Brown, a Seventh Circuit age discrimination case, knew or reasonably should have known. And then the instruction here, should have known that only websites acts infringed plaintiff's copyright. All of those instructions rejected because they're negligence instructions where recklessness is required. I see that I'm running up against the time that I've reserved. I do want to get to the This is plainly prejudicial error on this record. Three points I'd like to make. First of all, the contract with only websites, unambiguous. This Court can decide that as a matter of law. Establishes that only websites was required to take care of the copyright permissions for photographs that it provided, for photographs that Mr. Kast sent. Mr. Kast was responsible for those copyright permissions, but these aren't photographs that Mr. Kast sent because the jury specifically found that Mr. Kast did not copy anything, and you need to copy to send. So these are not photographs that Mr. Kast sent. The Zillow case that this Court decided last week, we put in a 28J letter, establishes the importance of a third-party contract just like the one here. And, of course, the Safeco case that the Supreme Court decided says, if a defendant reasonably determines its legal obligations, then it can't be held to be reckless or willful. Two other quick points. Mr. Kast respected copyrights. He didn't disregard them. At other times, this is at FER 15N26, when Mr. Kast understood he needed to secure a license, he secured a license. He paid for it and then sent those photographs to only websites. And one final point, the same is true of Mr. Kast's conduct the moment he learned of only websites infringement by receiving a cease-and-desist letter from Erikson. He took prompt and effective action in order to stop that infringement. Again, the Zillow case recognizes that that is a significant factor, and it absolutely forecloses a finding of willfulness. Thank you for the rest of my time. May it please the Court, Kevin McCullough for Plaintiff Erikson. Counsel wants the Court to reverse the jury's verdict on vicarious liability because we didn't show evidence of how many people went to Mr. Kast's website and how much money he made. But this Court has already rejected the quantification element of a vicarious liability standard. That happened, and everyone cites to that, in the Ellison case. The logic of Ellison is irrefutable. How much money someone made is an element of damages. The question that's been posed from the very beginning of vicarious liability in the Second Circuit and was quoted by this Court in the Fona-Visa case is whether or not there's a direct financial interest. Gershwin says direct financial interest, and that's what's quoted in Fona-Visa. Counsel wants to put a lot of weight on other cases, including Fona-Visa, that also say direct financial benefit. But the word benefit isn't a talisman. And this Court in Ellison rejected the notion that damages questions, how much money someone made, how many people went to a website, should be considered as an element  Sotomayor, what if there's no proof of benefit at all? There's an absolute proof of a benefit. Now, in the hypothetical case, would you concede in a case where there's no evidence of benefit at all? No. Let's take the case of someone puts a billboard up and says, come to my company, spend a lot of money. And they get a cease-and-desist letter before anyone shows up at their company. Maybe the damages in that case are limited, but liability is not questioned. So let me make sure I understand your proposition. It would be that any website on which there is infringing materials in violation of the copyright law would qualify, then, for vicarious liability? No. Well, where do you draw the line? Well, the question is, what is the relationship between the website owner's financial interests and the website? If it's a blog, for instance, there might be elements of fair use involved. There might not be a commercial interest. That's why the fair use defense was so heavily disputed here. And the court below found that this website, it's a financial wealth management website for high-earning individuals. The website is owned by Mr. Cast. The business is owned by Mr. Cast. He started it for commercial purposes. He got all the money. If there was any benefit at all, it went to Mr. Cast and to nobody else. Well, but I think that goes back to the question is, on this record, is there any benefit? And the answer is — Or, as you put it, financial interest. And the answer is absolutely. And contrary to the statements of counsel, we didn't argue to the jury that the saving of a license fee was the financial interest here. In fact, if you look at my closing, the very first thing I start with is the interest that Mr. Cast had in this website was rushing the website out to qualify for State funding programs. He admitted it on the stand, and there's direct evidence, written evidence of this in the record. Not only that, but Mr. Cast specifically talked about the value of these photos being a draw to elderly customers. That's the January 4, 2011, email that's cited in the record. This is Volume 2, page 71, and again, Volume 2, page 64. He says specifically, I want photos that look more like the Wells Fargo photos because there's an age difference between the adviser and the client, and that's a draw to my clients. There couldn't be a better record for vicarious liability. Essentially, let's say that a business lost money. Do they avoid liability? No. The question is a damages question. How much you made, how many people went to your website are damages questions. The financial interest of the individual and the website, the causal relationship, is what's the focus of Ellison, or yes, Ellison, and that's exactly what we start with in our closing argument. That's what we emphasize in our supplemental brief. There's no question on this record that the standard is met. In addition, the license fees do not, are not paid by only websites. There's numerous emails between the parties saying, we have a subscription agreement with Shutterstock. If you want photos from there, we get them free. If you get them from anywhere else, anywhere else, you want us to get them from anywhere else, Corbis, we pay for them because they're not ours. Mr. Cass went out and he didn't like the photos that were being suggested to him, so he went out and paid for one for his home page. Who copied the photos from the Wells Fargo website was a point of serious dispute at trial, obviously, and the jury didn't find him liable on that count, admittedly. But the jury didn't find him liable because they didn't think he was responsible or didn't even do the direct copying. Instead, the jurors made very clear that they didn't understand that copying, as opposed to copying plus publishing, was an element of copyright infringement. Sotomayor, can we talk about should-have-known? Yes. On the should-have-known standard. Well, I have a question before you get started. Doesn't the very concept, should-have-known, incorporate the understanding that the actor did not know? The question — Can you start with the yes or no? Only if you ignore constructive knowledge, right, where there's so much evidence that someone didn't know only but for putting their head in the sand. In that case — Well, we're focusing on that third, if you will, element of the instruction. That's right. It said — can I finish? It said should-have-known. And my question to you, as a matter of hard concept, if someone should have known, does that not mean that they did not know? They did not have actual knowledge, is my point. They did not know. They did not — And if they did not know, how can they be willful? The law recognizes that knowledge can fall into actual and constructive. If you didn't know — We're not talking constructive. We're certainly not talking actual. We're talking about a jury instruction that said you can find cast liable if he should have known. And my question, at the risk of repeating it, isn't the concept should-have-known bound up in that? Isn't that the understanding that the actor did not know? It's bound up in the exact same way as reckless disregard. The reckless disregard element, which everybody agrees is a proper enunciation of the law, implies someone didn't know but for reckless disregard. So let's — let me go back on that, because when we talk about willfulness in the copyright context, we're either talking about actual knowledge, and you've said, well, it means also constructive in some way. So I'm not sure I'm with you on that point. The second way you can get willfulness is reckless disregard, which you just mentioned. And the third way is the willful blindness. That tends to be known as the stick-your-head-in-the-sand approach. Of those three prongs of willfulness, where does should-have-known fit, in your view? Yeah. When we briefed this issue and when Magistrate Judge Lloyd ruled on it, we were all briefing around the constructive knowledge, willful blindness element. Our argument to — So in other words — but you said that there's actual awareness and constructive awareness, and it seems to be conflating actual awareness with reckless disregard. So are you saying that the should-have-known element somehow fits within reckless disregard? I think — let me perhaps provide — No, but why don't — if you could answer my question, yes or no, because that's what the copyright cases say. They lay out the standard, but now we have what we normally would think of as a negligence standard sneaking its way in there. So I'm trying to figure out, where do I look at that vis-a-vis the willfulness prongs? Right. The should-have-known standard is, is you should have known but for, and that's willful blindness, which this Court has approved. It just recently approved it in the Louis Vuitton case, citing to Island Software, which was approved in the Second Circuit. And there's not really any dispute that this circuit and the Second Circuit and every court agrees willful blindness is a proper element for willfulness. So let me just, to be clear, when we're analyzing the jury instruction given here, you should have known you're equating that to the willful blindness prong. It is. Thank you. And there's no doubt. Even if the, and in Island Software and in Louis Vuitton, the courts say the standard for contributory liability is good enough to satisfy willfulness, and the language for the contributory liability standard that was approved by this Court in Louis Vuitton is knew or had reason to know. And that's where that language comes from. There's not a distinction there. Or if it is, it's a hyper-technical one. And the facts in this case are overwhelming that he knew or had, or he was willfully blind or recklessly disregarded. He claimed that he didn't like the photos. He claimed that he told OnlyWebsite to take them off of his website. He told, he claimed on the stand that he wanted no photos on his secondary pages because it wouldn't load on mobile websites fast enough. All of that was discredited by actual e-mails from him to OnlyWebsites. The evidence in this case was overwhelming. He went back to the Wells Fargo website repeatedly in January and February, sending hyperlinks of the exact same pages that these photos were on. The testimony that he didn't know where they came from was refuted by the jury, rejected by the jury as not credible. And this Court certainly shouldn't give credence to it now in reversing the jury verdict. So even if, and if I may finish this as a half sentence, even if the Court finds that the technical jury instruction that was given wasn't fully correct, there's really no reason, no basis for this Court to reverse and find that his conduct was not willful. This jury instruction was harmless. The evidence in this case was absolutely overwhelming, that he either stuck his head in the sand or he recklessly failed to follow up on his obligation to make sure his website accorded with the copyright laws. Roberts. I have a question before I sit down. Yes, sir. We don't confer before we come out, so this is purely hypothetical. Suppose the panel concludes that this jury instruction, the should-have-known prong, vitiates the entire instruction and reverses on that basis. Should your client be given another full opportunity to prove the other prongs by additional discovery? I think the other prongs are satisfied, and what I would suggest is that we could submit it on the record, that there is overwhelming evidence, overwhelming evidence that he knew or stuck his head in the sand for months. You've answered the question. Thank you very much. We'll hear rebuttal. Just a few points, Your Honor. Should-have-known is not a willful blindness instruction. Willful blindness requires subjective belief that infringement is likely occurring and deliberate actions to avoid it. Otherwise known as blind the defendant has to blind themselves to direct proof of critical facts should have known as a negligence instruction. The BMG case says it. The Comey case says it. The Brown case says it. And it's what a jury would understand. Should-have-known, as a layperson understands it, connotes carelessness when culpability is required here. Turning back to the direct financial benefit requirement, Ellison does not say that it doesn't matter if no – if no – that no benefit was received. Ellison makes a point that the substantiality of the draw of infringing material is not relevant, but there must be a draw. So what Ellison says is, okay, if 5 percent of AOL's users are drawn by this infringement and 5 percent isn't substantial in the grand scheme of AOL's business, that still counts as a draw that satisfies direct financial benefit. But Ellison absolutely does not say if there's zero evidence whatsoever of any direct financial benefit of anyone viewing, of any customers being drawn, that that can still satisfy direct financial benefit. The two other factual points raised by Mr. McCullough as satisfying the direct financial benefit requirement, one is the rushed launch. The rushed launch, as we explained in our brief, on its face, is implausible. The rushed launch, the purpose of it allegedly, was at best to convince a State court, to demonstrate to a State court that certain services were offered. To demonstrate that certain services are offered, you don't need stock photos on your website. It's never been explained by Erickson. I see my time is up. I'll just finish this sentence with Your Honor's indulgence. It's never been demonstrated that these stock photos would in any way contribute to a rushed launch in a way that has a direct causal connection, as Ellison requires. And finally, Mr. McCullough pointed to the fact that Mr. Kast wanted other photos. Absolutely right. Mr. Kast didn't like these photos. He wanted photos that properly conveyed what services he was offering. So there was absolutely no benefit from any of the photos that Erickson had rights in. Thank you, counsel. And thank you for your pro bono representation. Thank you for your arguments in your briefing today. I know your time was very truncated, but you were both very effective in using that time. So thank you. And thank you for coming out from New York today.
judges: Hawkins, Thomas, McKeown